No. 222732, United States v. Stiteler Good morning, Your Honor. Mr. Murphy, whenever you're ready. May it please the Court. Your Honor, it's Tim Murphy, appearing for Mr. Stiteler, Federal Public Defender's Office. I want to thank the Court for expediting this appeal. It's greatly appreciated. My client has suffered from mental illness for most of his life. Between June of 2020 and May of 2021, my client made thousands of harassing phone calls and inappropriate calls to members of Congress. Even after he was arrested, he continued to make these calls while he was released. He ultimately pleaded guilty, was given 22 months in prison and a year of supervised release. We're arguing today that the search condition within that supervision was inappropriate for two reasons. Number one, it was not reasonably related to the factors under 3553A. And two, it was a greater restriction than necessary to meet those factors under 3553A. It could only be based on probable cause, isn't that correct? Reasonable suspicion, Your Honor, that's correct. So then, I mean, as someone on supervision, it might happen to any time, right? What was his particular objection? Well, Judge, if we look at page 155 of the record, that's where we see the Court's decision. The Court believed that having this evidentiary standard of reasonable suspicion meets the parsimony clause, that it qualified as being no greater than necessary because of the imposition being proper. And what I'd ask this Court to do is distinguish between the imposition and, excuse me, the imposition of the condition and how it's implemented. So if my client, for instance, was placed into sex offender counseling but was given the greatest sex offense counselor in the world, it would still be inappropriate because the imposition shouldn't have been imposed to begin with. The evidentiary standard that is required for searching someone under release does not address the factors under 3553A. The rationale the District Court gave was deterrence, primarily, it seems like. Your Honor, still it was not greater than necessary. It was still greater than necessary. They already had the tools before it. They could have visited. He was already in treatment. There was no reason to impose this extra condition. I think there's an analogy here with the Betts decision. How would they know other than when he starts making more harassing calls or starts to prepare to do so if they have reasonable suspicion to suspect that? Then I don't understand why that's an excessive condition. What is it that they would be looking for, I guess, is the question. This doesn't impact in any way his making calls. It doesn't impact in any way the treatment that he would receive. He doesn't have a history at all of possessing anything illegal. He's been nothing but honest with law enforcement. He's been cooperative with law enforcement. Is your point that this is duplicative of treatment? I don't know what happens in treatment for something like this. Medication is the big thing for him as well as counseling. My point is this. When someone endeavors to commit a crime, there's usually a strategy to not get caught. Usually crimes are done in secret or they're done quickly or with deception. There's no strategy here. The only thing that precipitates his conduct is his mental illness, and that is being addressed through treatment and also by the officers visiting. There's no reason why they need to go the step further of threatening a search. The idea that it has to be with reasonable suspicion doesn't answer the question what they might be looking for. Counsel? Buddy, go ahead. What if this person got a second phone that was not known to the government and somehow they traced those? Wouldn't it be appropriate to go and find that second phone, which the district court said that's his weapon? And whether or not that was perhaps a little bit more, a little amplified calling it a weapon because having a phone is not contraband. So I think that's a big distinction. Ordinarily it's not, but when you make threatening phone calls, it becomes like a weapon. The second phone scenario, Your Honor, there's no indication that he's ever been deceptive with law enforcement. And a lot of the cases that you see, even with these bank fraud cases, I think Betz was a bank fraud case, you see some deception there over and beyond the offense conduct. There's none of that in his history. He even has a history of turning himself in. There's nothing that this guy hides. There's no indication that he would hide something like that. He's been nothing but contrite with law enforcement. To the extent where he gave his name on these calls. And he's an educated guy. He knows that using the cell phone, they're going to see his number. But you would agree that his criminal conduct was prolific. I mean, he made, what, over 1,000 phone calls? My friend over here is going to correct that if I say yes. It's over 19,000, yes. And his language was rather specific with regard to Senator Warner and others with regard to threatening their lives. So what's to say that his neuroses, I mean, he's obviously ill. Doesn't take a turn for the worse and he suddenly fixates to do harm to someone again or threaten harm to someone again. Is his past conduct the limitation of what the terms and conditions of his probation can be? No, certainly not. So if his neuroses conceivably might generate secretive conduct, I mean, I realize that he gave his name and was rather public. It wasn't really very good criminal conduct in the sense of trying to avoid identification. I hear you. But nonetheless, criminal conduct that was threatening and perhaps could take a turn for the worse, why wouldn't the search provision have some relevance to attempting to thwart that or discover it or further examine it? Is it so far afield that it doesn't have some form of reasonable relation to what his prior conduct shows his condition to be? I would say that it's not reasonably related, I guess is the phrase I'm looking for. There's no indication in his past that he would be hiding anything. There's no indication that the medication that he's- So that concludes a conclusion that he might hide something in the future? No, it doesn't judge because- I mean, the modus operandi then becomes the definition as opposed to the criminal conduct and the supervision given the relevancy of the prior criminal conduct that he's admitted to. I think there's no indication that the track that he was on towards the end of this case, that the treatment was not working. I mean, you're right, the court has to do with what's in front of it. It doesn't have a crystal ball. Right. Absolutely. That's true. I think if you look at the- So you're saying then that there would be no reason to include within it some form of provision with regard to probation that they might be interested in what was going on in his home? They were able to visit. There would be no reason to search. There's no reason to think that he wouldn't be cooperative under these circumstances. Where is he now? Is he still incarcerated or is he on supervised release? He's on supervised release until the end of September. Until the end of September? Yeah, sure. So that period is almost over? That's why the appeal was expedited, yeah. Is there some of your knowledge he hasn't reoffended? No, and I would defer to my opposing counsel. We'll ask the government. Of course, but no, to my knowledge, no. You may soon find out. No, but I don't believe it's the case. The last point, I seem just slightly over. Briefly, go ahead. Around 151 of the record through 155, we see the discussion about the search condition. Right before that leading up, the court is addressing our other objection, which was the alcohol objection. It's not an issue on appeal, but I'd like the court to take a look at how individualized the discussion was there that Judge Wolford did. She's an excellent judge, but she really got into it with regards to the alcohol issue and contrast that with the discussion with regards to the search issue. Which is an individualized assessment and which isn't? I just ask you to take a look at that. Thank you. Good morning, Your Honors, and may it please the court. My name is Sean Eldridge. I'm an assistant United States attorney for the Western District of New York, and I represent the government on this appeal. The district court did not abuse her considerable discretion when she imposed a search condition based on reasonable suspicion. In light of the appellant's history, which, as you've heard and read, include making 19,000 calls over the period of about eight months to numbers associated with the U.S. Senate and the House, including at least two threatening calls, one to Senator Warner, one to Congressman Schiff, and importantly, where one of those calls was made while the appellant had been charged, was on release in this case under electronic monitoring, and still committed that same conduct, which got his bail revoked. To the best of your knowledge, has he committed any of this conduct while he's on release now? No, Your Honor, and I think that's a really important fact to view in terms of why this condition, which Judge Wolford carefully and thoughtfully said was needed to deter the defendant from engaging in this conduct again, is actually working. When Mr. Steitler was first arrested in this case, he was placed on pretrial supervision with electronic monitoring and other standard conditions of pretrial release, which typically, and in this case didn't, does not include a search condition. That's a supervised release special condition. What happened? Well, about two months later, he made more threatening calls and got himself arrested. Now we have that search condition in place, we can't get inside Mr. Steitler's mind and know, but Judge Wolford's careful, thoughtful, and frankly detailed, she talks about this for about four pages of the record, so with due respect to my colleague, I disagree with the notion that this was not an individualized assessment. For about four pages in the record, she discusses factors, which by the way came up earlier, they're laced throughout the proceedings, talking about the prior history, talking about his conduct that got him rearrested, talking about factors that are in the PSR going back into 2011 and 2014. What would a search do with respect to over activity though like this? Your address page says, you know, this is, there's nothing secret here, there's nothing hidden. What's the point of the search? Sure, Your Honor. Two responses, Judge Park. The first is I think the notion that because somebody uses their name in committing the crime means their search condition is absolutely inappropriate is incorrect. There's no doubt that when Mr. Steitler made some of these calls, and I say some because we don't know what happened in all 19,000 of them and I'm not even suggesting they were all answered, let's be clear about that. There's no doubt that he says in the two primary calls, this is Aaron Steitler. But if you think of an analogous or slightly analogous conduct at least, for example, say someone who's an online enticer of young individuals. If that person did their enticement using their own email address or their own name, would we say, oh, because you used your name, a search condition could never be appropriate? I don't think so. It's an individualized assessment for that individual. To answer the second part of the question, what would they find, it's the search condition which is at A164, there's a lot of talk about contraband, and especially in the brief, but it's not just contraband. It's contraband or evidence. So whether you want to view the phone as a weapon, which maybe there's a little bit of hyperbole involved in there, but I think it's accurate because that was the instrumentality, the tool of his crime. It also authorizes a search for evidence. So in any of the situations that have been posited, for example, Judge Pooler's example of if he were to obtain another phone, if there were reasonable suspicion to believe that that was happening, then the officers, the probation officers, would be entitled to search and recover that evidence, whether that phone, excuse me, whether we call it evidence or contraband. The fact that this condition too is, I'm sorry. I'm just trying to understand how that is more effective a deterrent than just there's a harassing call, it's reported, and it's nipped in the bud. I mean, I don't understand why that's better than reacting to a call. So I think both would happen, Your Honor, and I think, again, looking at the factors that the search condition has to be reasonably related to, that it is related to the facts and circumstances of the case, where we have an individual who's making calls presumably from his home because they're happening late at night, but I'll note that the search condition also includes a search of his person, his residence, or his vehicle. The matter of deterrence, so as Judge Wolford articulated, the fact that Mr. Steitler knows that he is subject to this search condition would hopefully deter him from making these phone calls in the future, and frankly, so far, it has. That it would also protect the public. It would allow law enforcement and probation to take that instrumentality from him. It provides the evidence of the crime moving forward. And it also, as Judge Wolford articulated, had concerns about whether or not he would be compliant on release and whether he could be rehabilitated appropriately and having that search condition, which, by the way, has guardrails in place. This is not a blanket search probation, excuse me, permission, where probation can just barge in at any time, and those conditions have been upheld in many other cases. Some of the cases that are cited in the defense brief as saying it was inappropriate are cases where either there weren't findings made, it was just basically applied and in one case without even any notice being given, or also involved blanket search conditions, meaning no reasonable suspicion required. So we have that additional, not only is it reasonably related to the offense, for what I've talked about already, but we have that additional guardrail built in of reasonable suspicion followed by the fact that if there wasn't reasonable suspicion, Mr. Steitler would be able to raise that before the district court and challenge it afterwards. I think the idea that the condition is reasonably related to the offense is borne out more by looking at the seriousness of the offense.  And frankly, as Judge Wolford said, I forget her, the frightening, Judge Wolford described this as being very frightening and concerning to say the least. And I think that's amply borne out by the record. The last thing I'll say, Your Honors, is the court was concerned about this at the time of his plea. And that's how much this idea was on the court's mind at the time going back to when he plead. Mr. Steitler then had asked to be released. And Judge Wolford said, I want to think about this, I want a written motion. But she said, you know, this is at 105 of the record, you know, home confinement, GPS monitoring, that doesn't prevent him from committing the crime that he committed or crimes. And he did indeed commit the crimes while he was on home confinement with monitoring. Absolutely right, Your Honor. Absolutely right. And now that he's on supervised release, and by the way, the information I have is that Mr. Steitler's supervised release goes to December of this year. But we're in the same ballpark, so I'm not going to quibble too much about that. So you alluded to it. By what standard do we judge Judge Wolford's sentencing? Abusive discretion, Your Honor. The imposition of this condition is abusive discretion. And there's no doubt that is it possible that another judge sitting in this position might say, I think a search condition with no reasonable suspicion is appropriate. Sure, that's possible. Or another judge might say, I don't think it's appropriate. But I don't think on this record with the number of calls, the repeat conduct, the history went on supervision before that there's any abusive discretion in Judge Wolford's very thoughtful and very detailed, frankly, decision imposing the supervised release condition. Unless the court has any further questions, I'd ask that you affirm. Thanks very much. Thank you. Mr. Murphy, you're reserved two minutes for a vote. Thank you, Your Honor. The fact that there has been no violations so far is every bit evidenced by the fact he's in treatment. There's no indication that anyone has that these searches are keeping him from making these calls. Just because he hasn't committed a violation to date, and let's accept that just for argument's sake, that does not mean that the searches are the reason. Not at all. No one has any indication of that. It is page 155 where the court's finding is. I'm not quibbling with my friend across the aisle. There is a discussion that starts from 151 on. But I ask you to focus on that paragraph at 155. And it does include Judge Wolford having concerns with the fact that this took place in his house, which I would suggest to you this needs to be distinguished between a drug case where, you know, drugs are distributed inside a house, then the person's going to live there on supervision. They need to do searches. So the fact that it took place in his house I don't think is a major concern. It shouldn't be. And the idea of candor. I would just direct the court to a couple of the cases that really both of us have cited to. There's the White decision. That was a fraud case out of this court. There were multiple methods of deception that the court had before it. And that was a tax fraud case. Germanson was another fraud case. The defendant demonstrated lack of candor. We just don't have that here. So I would ask under these circumstances. Your Honor, are you asking a question? I'm sorry. So I would ask under the circumstances that you strike this condition. I thank you very much. Thank you, counsel. Thank you both. We'll take the case under advisement.